> In an action for an absolute divorce on the ground of adultery, unexplained evidence that defendant, with another man and two women, left a beer-saloon in New York city, and went to a house which was proven to be a house of ill fame, where they remained about an hour, and the evidence of a cabman that he had carried to and left at the house persons whom he knew "did not belong there," is sufficient to sustain a judgment for plaintiff.

Action by Dorcas U. Van Name against Paul N. Van Name for an absolute divorce on the ground of adultery.   Judgment for plaintiff, and defendant appeals.

Argued before BARNARD, P. J., and PRATT, J.

BARNARD, P. J.   This is an action for an absolute divorce on the ground that the defendant has committed adultery.   The only proof of the guilt of defendant consists of the fact that, on one evening specified, the defendant and another man left a beer-saloon in the city of New York in company with two women.   The party went to a designated house, and all entered and remained about an hour.   The defendant and the two women were then seen to come out.   The other man remained in the house.   The house was proven to be a house of ill fame by facts and general reputation.   A cabman testified to the fact that he had carried parties to the house, and left them there, "which I knew didn't belong there."   The bad character of the house was proven, under objection made by defendant.   The case is not like *Kenyon* v. *People*, 26 N. Y. 203.   In that case a woman living with her mother had been seduced under promise of marriage.   It was held that the chastity of the prosecutrix could not be established by proof of her character, nor by proof of the bad character of the mother's house.   In the present case the proof of the character of the house is necessary to give weight to the evidence of guilt. If parties were proven to go to the house with women, and the house was of evil repute, the inference of guilt is inferable by a court and jury if unexplained.   There was no explanation or evidence to contradict the inference. We therefore think the finding of the court, that the defendant was proven guilty of adultery, should be sustained.   *Allen* v. *Allen*, 101 N. Y. 658, 5 N. E. Rep. 341.   Judgment affirmed, with costs.

PRATT, J., concurs.

---

### MAXFIELD *v.* HOECKER.

*(Supreme Court, General Term, Fifth Department.   June, 1888.)*

1. MORTGAGES—CONSIDERATION—COMPOUNDING FELONY.

> Defendant testified that she executed the mortgage sought to be foreclosed to take up notes forged by her father, and held by plaintiff, who agreed, in consideration therefor, not to prosecute.   It appeared that plaintiff, when the mortgage was executed, surrendered some of the forged paper, and agreed to surrender the balance when certain other arrangements were completed, and that there was no other consideration for the mortgage.   *Held*, that the defense that the mortgage was given to compound a felony was sufficiently proven.

2. SAME—AGREEMENT TO COMPOUND FELONY—EVIDENCE.

> In such case, the evidence of the surrender by plaintiff of the forged paper, the taking of the note for the excess over the amount secured by the mortgage, and

his agreement to surrender all other paper of the same character, though subsequent to the execution of the mortgage, is competent, as showing the character and intent of the principal transaction.

Appeal from special term, Ontario county; ANGLE, Justice.

Action by Hiram Maxfield against Theresa M. Hoecker to foreclose a mortgage. The defenses were that it was obtained by duress, and given to compound an alleged felony. It appeared in evidence that about January 28, 1884, plaintiff held some nineteen or twenty thousand dollars of promissory notes made by various individuals, and indorsed by Frederick Hoecker, defendant's father, which plaintiff claimed were, and which in fact were, forged. Defendant was then the owner of the premises described in the mortgage, and also of a lot of land in Pennsylvania. Defendant testified that on the 22d of January, 1884, Mr. Maxfield came to her house, and stated to her, in substance, that her father had been making forged paper, and passing it off on him; that he wanted her to give him a mortgage for $5,000 upon her property, and to deed him the Pennsylvania property, which he would take for the sum of $1,000, and thus extinguish $6,000 of this forged paper; that, for the balance beyond that amount, about $13,000, he would take a note for 25 cents on the dollar, upon which he must have a responsible indorser; that, if settled in this way, it would be a full settlement, and no one should know the circumstances; that, if not settled in that way, he would put the defendant's father into state's prison, would go to the length of the law, and to its bitter end; but that, if settled, he would not prosecute her father. The defendant agreed to do this. In pursuance of this agreement between her and Mr. Maxfield, she, on the 28th of January, 1884, executed and delivered the bond and mortgage in question; and the forged paper to a like amount, with $1.81 of excess, was surrendered up to her. At the time of this transaction she was indebted to the plaintiff in the sum of $295.54 only, for which she gave her notes, with the indorsement of Mr. Havill, which notes she subsequently paid. In pursuance of this original arrangement, she procured Mr. Havill, who was approved by Maxfield, to become an indorser upon her note for the 25 per cent. of the balance of the forged paper held by him, and on the 19th day of February that transaction was closed. Havill, defendant's father, and Maxfield had an interview at the latter's house the day before, and on that day they went to the house of defendant, where a list of all the paper that was claimed to be forged was given to the defendant, together with, as they supposed, all the paper described in the list. Defendant, and Mr. Havill, who was acting as her friend, were desirous of having some written evidence that they had secured the object which they sought, and a paper prepared by Mr. Havill was presented to Maxfield for his signature. This he refused to sign, but instead drew up and signed the following: "NAPLES, February 19, 1884. It is agreed between Hiram Maxfield, of the first part, and Theresa M. Hoecker and H. H. Havill, of the second part, if the party of the first part shall find any poor paper that Fred F. Hoecker has designated as poor, or does so designate, the same shall be turned over and transferred to parties of the second part, upon payment of one-fourth the face value, and interest. This agreement means that, if he finds (party of the first part) any notes which shall be acknowledged as bad paper, the same shall be turned over, upon the above terms, from this date on. [Signed] HIRAM MAXFIELD. H. H. HAVILL." The note which defendant and Mr. Havill signed at that time was objected to by her because of the unusual clause contained in it. The note is in the following form: "$3,250. For value received, I promise to pay to Hiram Maxfield, or bearer, $3,250, with interest as follows: Interest to be paid on the whole sum, February 18, 1885, February 18, 1886, and February 18, 1887. The principal of said sum is to be paid in three equal annual payments, on the 18th February, 1888, February, 1889, and February, 1890, together with interest on all sum or sums remaining unpaid. There is no defense to said note either

in law or equity. *Dated Naples, February,* 1884. [Signed] T. M. HOECKER. H. H. HAVILL." At the special term the second ground of defense was sustained, and the complaint dismissed. Plaintiff appeals.

*T. M. Howell,* for appellant. *Cogswell, Bentley & Cogswell,* for respondent.

DWIGHT, J. The action was to foreclose a mortgage of real estate. The answer alleged duress, and that the mortgage was given to compound a felony. The court found the second defense established, and the judgment dismissed the complaint, but without costs, since the parties were *in pari delicto.* The question principally argued on this appeal is as to the sufficiency of the evidence to support the finding of fact upon which the judgment is based. A careful examination of the evidence in the case satisfies us that the judgment cannot be disturbed on this ground. The burden of proof was undoubtedly on the defendant. She was required to establish her defense by a very clear and satisfactory preponderance of credible evidence. This she has done by the direct evidence on her part which relates to the principal transaction of January, when the mortgage was given, if that evidence was not so inherently improbable or so self-contradictory as to render it unworthy of credit. It was evidently accepted as credible by the court below; and the question of the degree of credit to be accorded to witnesses is one which must, in most cases, be committed to those judges of the fact, before whom the witnesses are produced, and by whom their appearance on the stand, and the manner of giving their testimony, may be observed and considered. But, aside from the direct evidence bearing upon the principal transaction, the evidence, oral and documentary, of subsequent transactions between the parties, bears very strongly, if it is not of itself conclusive, upon the question of the character and intent of the principal transaction. The surrender by the plaintiff of the entire amount of forged paper then producible, and the agreement in writing to deliver up all other paper of the same character which he should afterwards find, was evidence of the character referred to, and was uncontradicted.

Objections were made to the admission of this class of evidence; and the exceptions to the rulings of the court by which it was admitted present the only remaining question in the case. The evidence was clearly competent. It was evidence of facts which the court was justified in considering as part of the same transaction as that in which the mortgage was given,—as performances on the part of the plaintiff of that which he undertook to do in consideration of the giving of the mortgage. It was a later transaction from which light might be reflected upon the earlier,—from which the purpose and intent of the earlier transaction might in some measure be inferred. It was competent as evidence in the nature of an admission; and any subsequent admission, declarative by act or word of the party, which tends to show the motive, intent, or character of his previous act, which is in question, is always admissible for that purpose. This is the rule even in criminal cases, and even though the subsequent act may constitute a distinct and separate crime. *Pierson* v. *People,* 79 N. Y. 424. The record in this case discloses no error which supports any exception taken on the trial, or to the findings of the court. The judgment must be affirmed, with costs.

All concur.